UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL R. KOLE, ) | |
| JOSEPH L. WEINGARTEN, and ) | |
| GLENN J. BROWN, individually and ) | |
| on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CASE NO. 1:10-cv-01735-TWP-DML |
| v. ) | |
| ) | |
| SCOTT FAULTLESS, DANIEL HENKE, ) | |
| EILEEN PRITCHARD, STUART EASLEY, ) | |
| DAVID GEORGE, ARTHUR LEVINE, ) | |
| THE TOWN COUNCIL OF FISHERS, ) | |
| INDIANA, and FALL CREEK TOWNSHIP, ) | |
| ) | |
| Defendants. | |

## Report and Recommendation on Plaintiffs' Motion to Reopen Case and to Certify Question of State Law to the Indiana Supreme Court

The Honorable Tanya Walton Pratt designated this magistrate judge, as provided by 28 U.S.C. § 636(b)(1)(B), to issue a report and recommendation on the plaintiffs' Motion to Reopen Case (Dkt. 69). The Motion to Reopen Case asks the court to lift its earlier-imposed stay for the purpose of this court certifying a question of state law to the Indiana Supreme Court. The plaintiffs' motion thus also requires the magistrate judge to provide a report and recommendation on the plaintiffs' corresponding Motion to Certify a Question of State Law (Dkt. 69-1). The proposed question involves the interplay between Indiana citizens' statutory voting rights in local elections and a municipality's powers to reorganize under more-recently enacted laws. The Fishers defendants (meaning all defendants except Fall Creek Township, which did not file a response to either motion) have responded that they do not object to the plaintiffs' request that

the court reopen the case and certify a question of state law to the Indiana Supreme Court. The parties do, however, propose different wording and scope for the question(s) to be certified.

**<u>Background</u>[1]**

This lawsuit challenges a proposed reorganization of the Town of Fishers that would combine it with Fall Creek Township and become a city. Under that proposed reorganization, the mayor will not be elected by voters but appointed by members of the council. In addition, all of those council members would be elected by voters at-large, in contrast to a council made up of both at-large members and members elected solely by the voters in that member's geographical district. The proposed reorganization has been approved by the current Town Council of Fishers (whose members are the individual defendants in this case), and it is scheduled for a vote during the next general election within the Town in November 2012. The plaintiffs are registered voters within either of the Town of Fishers or Fall Creek Township.

On May 3, 2010—before the Fishers Town Council formally considered what eventually became its proposed reorganization—the plaintiffs had filed a petition with the Fishers' Town Clerk under Ind. Code § 36-4-1.5-2 requesting the Town Council to adopt a resolution submitting to the Town's voters the question whether Fishers should be changed from a town to a "traditional city."[2] That "traditional city" would, among other things, have a mayor elected by the citizens of the city. The plaintiffs' referendum is *also* scheduled for a vote in the November 2012 general election.

---

[1] This background section is taken largely from the court's Entry on Defendants' Motion to Dismiss and Alternative Motion to Set a Bond on Plaintiffs' State Claims (Dkt. 68 ), entered September 2, 2011.

[2] "Traditional city" is not a statutory term or a term used in the plaintiffs' petition, but rather is the court's shorthand for referring to the proposal embodied in the plaintiffs' petition.

The plaintiffs' amended complaint asserts that the proposed reorganization deprives them of certain voting rights Indiana law unequivocally grants—the right to elect a mayor and to elect some council representatives by geographic district—in violation of state law and, as a consequence, in violation of the First and Fourteenth Amendments to the United States Constitution.  The plaintiffs principally rely on two Indiana statutes:  (1) Ind. Code § 36-4-5-2(a), which provides, for a second class city, "[a] mayor, who is the city executive, shall be elected under IC 3-10-6 by the voters of each city," and (2) Ind. Code § 36-4-6-3(i), which provides, for a second class city, that "[e]ach voter of the city may vote for three (3) [city council member] candidates for at-large membership and one (1) candidate from the district in which the voter resides."[3]

The Fishers defendants moved to dismiss the plaintiffs' amended complaint on the ground that their complaint failed to allege federal constitutional claims on which relief may be granted and, without viable federal claims, the court should decline to exercise supplemental jurisdiction over the state law claims.  The lynchpin of the defendants' argument was the Reorganization Act, at Ind. Code art. 36-1.5.  The Fishers defendants argued that the Reorganization Act, passed by the Indiana General Assembly in 2006, contemplates and legitimizes a town's choice to reorganize as a city in a non-traditional way, such as the proposed reorganization passed by the Fishers Town Council, without running afoul of any of the statutory

---

[3]   The plaintiffs also emphasize other provisions of the Indiana Code, including the general Local Government provisions, Ind. Code ch. 36-1-2, and the general Election Code, Ind. Code ch. 3-5-2, as sources of the inviolable right of a citizen of a *city* to elect the city's mayor and city legislative members by geographic district.   They further point out that the Election Code defines a city by reference to a statutory section, Ind. Code § 36-4-1-1, within the same title and article as the voting rights at the center of this litigation.  In short, the plaintiffs argue that the mosaic of these various statutes prohibit a town from reorganizing as a city without preserving rights under the Election Code for electing a city's executive and members of its legislative body.

3

voting rights that otherwise may be recognized under the statutes cited by the plaintiffs. The defendants' argument pointed to the broad purposes of the Reorganization Act, the broad powers granted to local entities under the Act, and the General Assembly's directive that the Act be "liberally construed," as described, respectively, in Ind. Code § 36-1.5-1-1, § 36-1.5-4-4, and § 36-1.5-1-5. In addition, they relied on the provisions of the Reorganization Act regarding any conflict between it and other laws, citing Ind. Code § 36-1.5-1-4, which states that a political subdivision may exercise powers granted by the Act "without complying with the provisions of any other law, statute, or rule," and Ind. Code § 36-1.5-1-6, which states that "[e]xcept as otherwise specifically provided by law, to the extent the provisions of this article are inconsistent with the provisions of any other general, special, or local law, the provisions of this article are controlling, and compliance with this article shall be treated as compliance with the conflicting law."

As the court found, the decision whether the plaintiffs' federal constitutional claims are viable or should be dismissed under Rule 12(b)(6) requires a threshold determination whether the Reorganization Act authorizes a local government entity to reorganize in a manner that eliminates voting rights recognized by other state statutes. That question—as examined and explained by the district court—is one that requires the construction of Indiana state statutes not readily discerned and susceptible to plausible competing interpretation, for which Indiana courts have not yet had the opportunity to provide guidance. In addition, the Indiana statutory provisions concerning the structure of municipalities and the voting rights of Indiana citizens in local elections address matters of profound importance to the state. These considerations led the court to abstain from deciding the plaintiffs' federal claims to "provide the state with an opportunity to, for the first time, shed light on the meaning and scope of the Reorganization Act

and clarify the extent of authority a local governmental entity has to reorganize its structure and administration under Indiana law." (Dkt. 68 at p. 15). The court has retained jurisdiction over the plaintiffs' federal claims but has abstained "from deciding questions of federal constitutional law pending an authoritative determination of Plaintiffs' state law claims and interpretation of the contested state statutes by an Indiana state court." (*Id.* at p. 21). The court contemplated that the plaintiffs would file an action in state court to obtain that determination.

## Analysis

### A. Whether the Court Should Certify a Question of State Law to the Indiana Supreme Court

The plaintiffs' motion to reopen asks the court to find that, instead of the plaintiffs filing a new case in state court, a more expedient manner for obtaining an authoritative determination of the state law claims that underlie the plaintiffs' federal constitutional claims is the court's certification of the state law question to the Indiana Supreme Court, as provided by Rule 64(A) of the Indiana Rules of Appellate Procedure. The plaintiffs point out that even if they bring a new state court case, any decision on the question of Indiana state law likely would be appealed, and the issues eventually would reach the Indiana Court of Appeals, and then the Indiana Supreme Court on a discretionary basis—but many months, if not years, later than if this court now directly requests the Indiana Supreme Court to accept or refuse the state law questions for its determination. Delay may prejudice all the parties too, because the reorganization proposal and the plaintiffs' competing proposal are scheduled for a vote of Fishers and Fall Creek Township voters in November 2012, and a decision later than the November 2012 vote could significantly affect the parties' remedies and the governmental structure of Fishers. And, as noted above, the Fishers defendants have not disputed the propriety of certification.

Rule 64 of the Indiana Rules of Appellate Procedure permits a federal district court to certify a question of Indiana law to the Indiana Supreme Court "when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent."  Only in a rare case will this court find it appropriate to ask the Indiana Supreme Court to accept a question for decision.  Certification is appropriate, however, "'when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.'"  *Green v. Ford Motor Co.,* 2010 WL 2673926 at *3 (S.D. Ind. June 30, 2010) (quoting *State Farm Mut. Auto Ins. Co. v. Pate,* 275 F.3d 666, 672 (7th Cir. 2001)).

These considerations are virtually identical to those that persuaded the court to abstain from deciding the state law issues underlying the plaintiffs' federal constitutional claims, as addressed in detail by the court's Entry on Defendant's Motion to Dismiss ( Dkt. 68).  And for the same reasons that the court determined that abstention was appropriate, certification to the Indiana Supreme Court of the pivotal question regarding the Reorganization Act's affect on statutory voting rights is an appropriate vehicle for obtaining an authoritative determination of the issues underlying the plaintiffs' state law claims.  In addition, determination of the state law issue will be outcome determinative of the federal constitutional claims.  Those claims present vital issues of state law affecting the structure of Indiana municipalities and voting rights of Indiana citizens, and the Indiana courts have not had occasion to address them.  Moreover, the court is persuaded that the nature of the questions presented militates in favor of determination

by certified question rather than the far more lengthy process abstention, coupled with a separate state court action, would require.

### B. The Scope and Wording of the Question(s) to Be Certified

Although the parties do not disagree that this court should certify a question to the Indiana Supreme Court regarding the state law voting rights issues and the effect of the Reorganization Act, they disagree on the appropriate scope and wording of the question(s). Three specific issues relating to scope and wording require discussion. First, the defendants' proposed wording incorporates a question regarding the "timing" of the votes scheduled on both the reorganization proposal and the separate petition for Fishers to become a "traditional" city. Second, the plaintiffs propose that the issue presented be articulated in two separate questions. Third, the defendants want the court to pose an additional, unrelated question to the Indiana Supreme Court.

#### 1. *The "timing" question*

The plaintiffs alleged in this case that the Fishers Town Council's delay in scheduling a vote on the plaintiffs' petition (to more than two years from the date of that petition) violated their voting rights. The court dismissed that claim (*see* Dkt. 68), and the plaintiffs' motion to reopen and to certify a question of state law does not challenge or even address that ruling. The plaintiffs also made the related argument that it would be inherently confusing to voters and unconstitutional to have both the defendants' "non-traditional city" and their "traditional city" referenda combined on the same ballot. This court has not yet specifically addressed that argument. The Fishers defendants now want this "combination" issue to be incorporated into the question certified to the Supreme Court. The court finds it inappropriate to do so. First, to the extent the issue revolves around an alleged improper delay in putting the plaintiffs' proposal on

the ballot, this court has already ruled, and it is not appropriate (or necessary) for the court to seek guidance from the Indiana Supreme Court on that claim. Second, whether the Fishers defendants' proposed reorganization is properly put to the voters at all is within the question to be certified to the Indiana Supreme Court. The Supreme Court's determination of that question could render the "combination" question moot. Finally, whether having both petitions on the same ballot is impermissibly confusing is a separate question, and the defendants have not offered any reason why it is worthy of certification under Indiana Appellate Rule 64. Indeed, it may not even present a question of *Indiana* law. If and when that question is squarely presented for determination, this court can rule on it.

   2. *The plaintiffs' two-part question*

In addition to the issue specifically implicated by the claims in this case (whether voting rights granted by certain Indiana statutes can be eliminated by a governmental structure purportedly authorized by the Reorganization Act), the plaintiffs propose that the court certify a more general question as well:

> Whether a political unit may reorganize into a city under Ind. Code § 36-4-1.5 (the "Reorganization Act")[4] in a manner that defines a "city" differently than Ind. Code § 3-5-2, Ind. Code § 36-1-2 and/or Ind. Code § 36-4-1.

This articulation of the issue posits a broader question than that presented by this case. The plaintiffs' claims are premised on what they contend is an unconstitutional deprivation of *voting rights* conferred by Indiana statutes. Whether the Reorganization Act permits other sorts of variances from the attributes of a "city" outlined in Indiana statutes goes beyond the issues underlying the claims the plaintiffs have asserted in this case. Asking the Indiana Supreme Court to opine on this theoretical question is not appropriate. Moreover, even if the plaintiffs were

---

[4] The plaintiffs' proposed question also incorrectly cites the Reorganization Act, which is at Ind. Code art. 36-1.5.

challenging in this case the legality of other (non-voting rights) attributes of the defendants' proposed reorganization, they have not demonstrated that those challenges implicate *federal* constitutional rights. When a plaintiff has brought a purely state law claim in federal court and then asked the federal court to certify the question to the state supreme court, that factor militates against certification. *See Brown v. Argosy Gaming Co.*, 384 F.3d 413, 417 (7th Cir. 2004) (court is entitled to take into account whether the request for certification came from a plaintiff who chose federal jurisdiction in the first place).

    3. *The bond question*

The Fishers defendants request that this court include in its certification another question of state law they would like the Indiana Supreme Court to answer.[5] They want the Supreme Court to say whether the plaintiffs are required by Ind. Code ch. 34-13-5 (the Public Lawsuit Act) to post a bond in order to challenge the Town of Fishers reorganization proposal. This court has already ruled on the bond issue. It denied the defendants' request, and the defendants have not set forth any basis for this court to reconsider its ruling, made any attempt to demonstrate that the court's decision was wrong, nor shown that this issue is worthy of certification under the stringent standards to be applied under Ind. App. R. 64.

  **C. The Question to Be Certified to the Indiana Supreme Court**

This court should fashion the certified question in an objective manner not suggestive of any particular outcome. The defendants' proposed wording is not appropriately objective, so it requires modification on that basis. The magistrate judge recommends that the question certified to the Indiana Supreme Court be formulated as follows:

---

[5]   The defendants did not bring a separate motion on this matter as required by Local Rule 7.1(a).

9

> Whether a political unit may reorganize into a city under Ind. Code art. 36-1.5 (the "Reorganization Act") in a manner that eliminates voting rights recognized under Ind. Code § 36-4-5-2 and Ind. Code § 36-4-6-3(i), including reorganization as a city with (1) a council elected entirely at large, and (2) a mayor appointed by that council.

The court notes that if the Indiana Supreme Court decides to accept the question for decision, it may word it as it chooses. *See Green v. Ford Motor Co.,* 942 N.E.2d 791, 796 (Ind. 2011) (revising and restating certified question).

## **Conclusion**

For the reasons set forth in this entry, the magistrate judge recommends that the court certify to the Indiana Supreme Court the foregoing question of Indiana law, under Rule 64 of the Indiana Rules of Appellate Procedure. The Clerk is directed promptly to mail a copy of this report and recommendation to each party in accordance with Fed.R.Civ.P. 72(a).

Any objections to this report and recommendation must be filed with this court in accordance with Fed.R.Civ.P. 72 and 28 U.S.C. § 636(b)(1) within 14 days of service. Failure to object will result in waiver of objection or appeal of the issues addressed in this report and recommendation.

So ORDERED.

Date: 11/18/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Sara R. Blevins
LEWIS & KAPPES
sblevins@lewis-kappes.com

Mark Jason Crandley
BARNES & THORNBURG LLP
mcrandley@btlaw.com

Steven Walter Griesemer
LEWIS & KAPPES
sgriesemer@lewis-kappes.com

Kirk A. Horn
MANDEL HORN MCGRATH & REYNOLDS, P.C.
khorn@mhmrlaw.com

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com